636 So.2d 970 (1994)
Barbara BARRON
v.
FIRST LAKE PROPERTIES, INC.
No. 93-CA-902.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 1994.
Peter A. Kopfinger, Philip G. Caire, Blondeau, Caire & Gregorie, Baton Rouge, for defendant-appellant, First Lake Properties, Inc.
Harry E. Forst, New Orleans, for plaintiff-appellee, Barbara Barron.
Rodney J. Lacoste, Jr., Stassi & Griffith, Metairie, for intervenor, appellee-appellant, Jefferson Parish Hosp. Service Dist. No. 2 d/b/a East Jefferson Gen. Hosp.
Before KLIEBERT, BOWES and GRISBAUM, JJ.
BOWES, Judge.
This appeal is taken from a judgment of the Office of Worker's Compensation for the State of Louisiana in favor of plaintiff, Barbara Barron, and intervenor, East Jefferson General Hospital (hereinafter "East Jefferson"). We affirm.

FACTS
Barbara Barron was employed as assistant manager by the defendant, First Lake Properties (hereinafter "First Lake") in July, 1991, when she slipped down several steps and injured herself. She immediately reported the fall, which was unwitnessed, to Susan Spears, the manager; however, no accident or claim forms were filled out or submitted by Spears. Mrs. Barron did not seek treatment for her injuries, which included headaches and back pain, until September of 1991. Meanwhile, on August 30, 1991, plaintiff was laid off her employment at First Lake.
By mid-September, plaintiff's complaints had increased to such an extent that she finally sought medical treatment. She initially saw Dr. Harold Ehrenberg, a chiropractor, on September 17, who referred her to Dr. Michael Wilensky, a neurologist; he ordered diagnostic testing at St. Jude Medical Center and ultimately referred her to Dr. Lucien Miranne of Neurological Associates. Conservative treatment had been unsuccessful and Ms. Barron's continued pain necessitated two more diagnostic tests to be performed at East Jefferson. From those tests, it was discovered that plaintiff suffered from a ruptured cervical disc, and a laminectomy was performed by Dr. Miranne at East Jefferson *971 on October 17, 1991. Sometime after surgery, the compensation insurer, Guarantee Mutual, approved the compensation claim and paid some of the medical bills incurred. After Guarantee refused to pay the remainder of the medical bills, plaintiff filed an action in the Office of Worker's Compensation. Following a hearing, the hearing officer granted judgment in favor of plaintiff in the amount of $5,040.00, plus interest and costs, which sum represents expenses due to Parish Anesthesia (related to surgery) for $770.00; $125.00 to St. Jude Medical Center (initial diagnostic testing); and to Neurological Associates (Dr. Miranne, related to surgery) for $4,145.00. Judgment was also granted in favor of East Jefferson for $7,269.53, plus interest and costs. Attorney fees were disallowed.

ASSIGNMENTS OF ERROR
Defendant/appellant, First Lake, avers on appeal that once Guarantee Mutual paid the $750.00 on each bill as required under LSA-R.S. 23:1142 (infra), that it was error for the trial judge to determine that the insurer had denied compensability of the claim and, further, that he incorrectly interpreted the above statute. East Jefferson answered the appeal averring that the court erred in denying attorney fees.

EVIDENCE AND TESTIMONY
Mrs. Barron testified that in September, when she began medical treatment, she contacted First Lake, through Joy Shane, the personnel director, and also through Ms. Spears. Ms. Shane told plaintiff to forward the bills, and that she would check on the matter as no accident report had been filed.
Once plaintiff was told by her physician that she would need the initial diagnostic testing, she, herself, contacted the insurer's adjusting firm through Don Long, the claims manager who, having not yet received any claim information from First Lake, would not authorize the testing. Plaintiff contacted Ms. Shane again and was again told to send in the medical bills. After she was told she needed surgery, plaintiff again contacted the insurance company and spoke to Ms. Judy Casenza, who had been assigned to the case by Mr. Long on October 3. After informing Ms. Casenza of her situation, plaintiff was told that the adjuster could not deal with her, but that she must obtain an attorney. Plaintiff did not try to contact the employer or the insurer again.
Ms. Diana Hickman, a medical secretary at Neurological Associates, testified that she telephoned the insurance company for approval of the diagnostic testing (to be done at East Jefferson) and was told by an employee named Lisa Mink that this was not a confirmed worker's compensation case; the office was not told to check back in case future medical services were needed, nor that a second opinion would be necessary. Rather, Ms. Hickman was told to contact Barron's private insurance. In Hickman's opinion, the compensation claim had thus been denied. Later, when the necessity for surgery became clear, Ms. Hickman did not contact the insurer again since the claim had already, in her opinion, been denied. Ms. Hickman relayed to East Jefferson the insurance information which she had obtained.
With regard to East Jefferson, Mr. Lou Barovechio, the supervisor of collections and cashiers, testified that as part of the admission process, the admitting physician relays to the hospital all insurance information relative to the patient. East Jefferson had been told by Neurological Associates that the compensation claim had been denied and that the applicable insurance would be the patient's private health plan. East Jefferson did not attempt to contact the insurance carrier for approval for the surgery. Further, it was stipulated at trial that East Jefferson had earlier contacted Guarantee Mutual, on October 4, 1991, to obtain approval of the diagnostic testing ordered by Dr. Miranne, and had been advised that the claim was being investigated and the tests could not be approved at that time. Therefore, according to Mr. Barovechio, the claim was considered denied and there was no further point in pursuing the compensation carrier.
Ms. Judy Casenza, the adjuster, testified that the file on Ms. Barron was received in her office on September 30, and was given to her on October 3. On October 4, East Jefferson contacted her for approval of the diagnostic *972 tests. Ms. Casenza replied that she could not approve the tests, and that the claim was under investigation. In answer to counsel's question "Were you not denying her benefits at that time?" Mrs. Casenza replied "I may have been denying benefits at that time, but I wasn't denying the claim completely, just allowing us to do our investigation." She later stated she was denying benefits "at that point in time." Because the investigation was incomplete, Ms. Casenza agreed that she would not have authorized any diagnostic tests or surgery until October 30, 1991. Ms. Casenza felt that the investigation was warranted because plaintiff's injury occurred in July of 1991, after which she continued to work until she was laid off in August; she did not seek medical treatment until September, and no accident form was submitted until the end of September, over two months later.

ANALYSIS
The applicable law with reference to the claims of this appeal is LSA-R.S. 23:1142 which states, in pertinent part:
B. Nonemergency care. Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's worker's compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
C. Emergency Care. (1) In no event shall prior consent be required for any emergency procedure or treatment deemed immediately necessary by the treating health care provider. Any health care provider who authorizes or orders emergency diagnostic testing or treatment, when said diagnostic testing or treatment is held not to have been of an emergency nature, shall be responsible for all of the charges incurred in such diagnostic testing or treatment. Said health care provider shall bear the burden of proving the emergency nature of the diagnostic testing or treatment.
(2) Fees for those services of the health care provider held not to have been of an emergency nature shall not be an enforceable obligation against the employee or the employer or the employer's worker's compensation insurer unless the employee and the payor have agreed upon the treatment or diagnostic testing by the health care provider.
D. Fees and expenses. If the payor has not consented to the employee's request to incur more than a total of seven hundred fifty dollars for any and all nonemergency diagnostic testing or treatment when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee's condition resulting from the withholding of such health care provider services.
E. Exception. In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
The hearing officer in this case found that section (E) applied under the circumstances of the present case, as follows:
The defendants turned down and refused to pay for valid medical expenses of claimant and this brought into effect R.S. 23:1142E.
Under the [above] statute, the health care providers contacted the worker's compensation insurance carrier of defendant and they would not authorize the medical tests or treatment. This was a denial that claimant's injury was compensable as a worker's compensation claim and under R.S. 23:1142 E., and no approval from the *973 payor is required prior to the provision of any diagnostic testing or treatment for that injury.
We find no error in this interpretation and this determination made by the court. Section (E) merely holds that when a payor has denied compensability, no approval is required for testing or treatment. There is nothing in the statute which alludes to, or discusses, the length of the term of denial.
We appreciate that the underlying facts of the case would give rise to an investigation in order to determine the validity of the claim. However, in the present case, the claim had been, if only temporarily, denied, and neither plaintiff and the health care providers could know the final determination of the insurer. No one was informed by the insurer that a second opinion might be required, nor were they advised to call back, nor that there might be a change in the determination made.
The wording of the statute is clear, and when a law is clear and unambiguous, and its application does not lend to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. The words of a law must be given their generally prevailing meaning. LSA-C.C. art. 11. In Black's Law Dictionary Fifth Edition 1979, "to deny" is defined as "... To give negative answer or reply to. To refuse to post or accept. To refuse to grant a petition or protest." Webster's New Collegiate Dictionary (1981) defines the word in pertinent part as "... to disclaim connection with or responsibility for; ... to give a negative answer to ... to refuse to grant..." Accordingly, we hold that the generally prevailing meaning of the word "deny" exactly fits the situation before us in which the insurer refused to grant and gave a negative reply, first to Ms. Barron, and then to Mr. Hickman in their separate inquiries and requests for authorization of medical procedures.
We believe our interpretation to be logical, especially in light of the ultimate determination by defendants that the claim was compensable. In a worker's compensation case, the employer has a duty to furnish all necessary medical and non-medical services. LSA-R.S. 23:1203(A); Williamson v. CIGNA, 595 So.2d 325 (La.App. 3 Cir.1992). To interpret LSA-R.S. 23:1142 as defendant claims would, as the trial court indicated, result in section (E) being a loophole for insurers to deny payment of expenses incurred during an "investigatory" period. Certainly, there are situations in which a brief investigatory period may be justified provided it does not prevent or delay emergency treatment, or treatment deemed necessary and which cannot be postponed. However, it is incumbent on the insurer to make it clear to the claimant that the refusal is only temporary, not final, and that a brief investigation will be made immediately after which the insurer will again immediately contact the claimant and his representative again and inform him of their decision to permanently deny the claim or not. If a worker's compensation claim is found to be valid by the insurer or the court, the employer will be liable for those expenses under LSA-R.S. 23:1203 as well as LSA-R.S. 23:1142(D). If it's not compensable, the employer will not be held liable for them.
The court, therefore, correctly determined that section (E) was applicable as an exception to the requirement of consent delineated in LSA-R.S. 23:1142 and no prior approval by Guaranty was necessary before the provision of the medical expenses incurred here. See Williamson, supra.
Both plaintiff and East Jefferson contend that the trial court was in error in refusing to award attorney fees and penalties. However, only East Jefferson filed an answer to the appeal regarding attorney fees. Neither penalties nor attorney fees were prayed for by plaintiff or intervenor. At the trial, counsel for plaintiff attempted to introduce information on attorney fees to which counsel for defendant objected and the objection was sustained by the trial court. Therefore, the pleadings were not enlarged.
LSA-R.S. 23:1142(D) permits the granting of attorney fees if the court finds that the insurer was arbitrary and capricious, or without probable cause, in withholding its consent. The trial court did not make such a *974 finding, nor do we. The circumstances and timing of plaintiff's accident and the timing of her complaints, and finally, the timing of her treatment, warranted some investigation by the employer and the insurer. We cannot say that the trial court was manifestly erroneous in failing to find that the insurer acted arbitrarily initially in investigating the claim for a reasonably brief period of time.
In the original judgment of the court, prepared by plaintiff, attorney fees were not mentioned. An amended judgment was filed and signed by the court on September 2, 1993, which specifically included a denial of attorney fees. However, the amended judgment was signed almost one month after a suspensive appeal was taken by defendant on the original judgment, and because the court was divested of its jurisdiction, that amended judgment is null. Further, the change is a prohibited substantive amendment under LSA-C.C.P. art. 1951. Therefore, the appeal taken by both parties from the amended judgment is dismissed, inasmuch as such judgment is null.
In light of the original judgment, the trial court's findings, and our determinations above, we find that East Jefferson and plaintiff (who failed to answer the original appeal) are not entitled to attorney fees. The case cited as authority for such an award, Haynes v. Lee White Wrecker Service, 612 So.2d 944 (La.App. 4 Cir.1993), is distinguishable from the case before us since, in that case, plaintiff was a layman who filled out the form himself, and as the court there stated "[plaintiff], who is not a lawyer, should not be penalized for not specifically requesting this type of award." In the present case, plaintiff's attorney filled out and signed the form; and while it does not have a section specifically referring to attorney fees, there is sufficient opportunity for an attorney, who is presumed to be learned in the law, to add a request for such fees on the form.
Finally, there is no applicable statutory provision which would permit the imposition of attorney fees under the circumstances and facts of this case.
For the foregoing reasons, the original judgment is affirmed. All costs of this appeal are assessed to defendants.
AFFIRMED.