| ^CANNELLA, Judge.
The Claimant, Linda Gros, appeals from the judgment rendered by the Office of Workers’ Compensation (OWC) in favor of Defendant, Maryland Casualty Company (Maryland), dismissing her claim for reimbursement of medical expenses. For the reasons which follow, we reverse and remand.
The facts giving rise to this controversy are not in dispute. The Claimant was employed at a law firm in 1992 when she sustained a severe back injury by slipping down in the office. Over the years, she has had two separate surgeries for this *173 injury and remains disabled. Her treating physician from the outset of her injury was Dr. Robert A. Fleming.
.On January 9, 1997, Dr. Fleming performed the second operation on claimant’s spine, a laminectomy at L5-S1, which included a bone graft. In his September 3, 1997 followup report, he expressed concern that the fusion was not solid and that a grafting procedure might be necessary. The Claimant was complaining of severe pain and numbness in her right leg, going down to her foot and a declining ability to walk without assistance. Dr. Fleming had Magnetic | ¡¡Resonance Imaging (MRI) performed and, based upon it and his examination of claimant, he recommended surgery and scheduled it for February 5, 1998. Maryland, objected to the surgery and refused to authorize payment for it. Maryland scheduled a January 20, 1998 second opinion exam by its physician, Dr. Robert A. Steiner. Dr. Steiner agreed that claimant had severe problems and was at this time disabled. However, he did not think that another operation would benefit her.
On March 10, 1998, Maryland filed a request with the OWC for an independent medical examination (IME) of Claimant by a physician chosen by OWC. On April 8, 1998, OWC forwarded a request to Maryland for' additional information. It was noted therein that failure to timely supply the information could result in the denial of the IME. There is nothing in the record to indicate whether Maryland responded timely. But, on April 27, 1998, OWC responded, denying Maryland’s request for an IME. OWC found that “the evidence presented does not reflect that there is presently a medical or factual dispute regarding the present physical status of this individual, as required by La R.S. 23:1123.” The Claimant returned to Dr. Fleming on May 20, 1998. Following his examination and confirmation of his earlier findings, he again recommended surgery. On June 4, 1998, the Claimant forwarded the surgery request to Maryland, noting the denial of the IME by OWC. On June 8, 1998, Maryland responded negatively, stating that “[a]t this point, Maryland will not consent to payment for this surgery....” After receipt of the Maryland letter, the hospital again cancelled the Claimant’s surgery. Thereafter, upon obtaining Medicare coverage through social security, Dr. Fleming again rescheduled the surgery for July 21, 1998. Maryland was again notified and again informed Dr. Fleming and |4the hospital that it would not pay for the surgery. In a follow up letter by Maryland to Dr. Fleming, Maryland notes: “I denied payment for any surgery ...”
The Claimant was operated on by Dr. Fleming on July 21, 1998. It is alleged, although support cannot be found in the record before us, that on the eve of the surgery a letter was received by someone on behalf of the Claimant informing her that an IME had been set for August 7,1998.
Following the surgery, the Claimant testified that her range of motion improved and her pain has significantly decreased. She can now walk without a walker. She again requested reimbursement for her remaining medical bills from this surgery and was again denied by Maryland. The Claimant filed with OWC a disputed claim form for recovery of her remaining medical expenses. In that claim, she also asserted that she had outstanding medical bills from her previous surgery that had never been paid by Maryland and also made demand for payment of those.
Following a hearing, the OWC rendered a judgment, without cited legal authority, denying the Claimant’s request for reimbursement of all her medical bills. Although the trial judge noted that it “was not impressed” with the Claimant, there were few other reasons for the ruling. It is from this judgment that the Claimant appeals.
On appeal the Claimant argues that the trial judge erred in denying her claim for *174 reimbursement of medical bills, both relating to her former and last surgeries. The Claimant contends that she met her burden of proof of showing that the injury from which she suffered was work related and covered by workers’ compensation benefits and that the medical treatment which she had was | ¿necessitated by the work related injury. Therefore, she contends that the trial judge erred in denying her reimbursement for the medical treatment which she received.
Maryland argues that, in the absence of their consent to the treatment, it is not liable for the medical treatment which the Claimant pursued. In the alternative, it argues that its liability is limited by La. R.S. 22:1142 to $750. Further, Maryland argues that since an IME was scheduled before the surgery, albeit noticed the day before, it should be relieved of liability for the surgery that was performed. As to the medical bills for the previous surgery, Maryland contends that there is a discrepancy in what the Claimant contends is owed and what it contends is owed and that the Claimant did not meet her burden of proving that the bills submitted related to treatment for the work related injury or that she paid the bills.
It is well settled that an employer or her workers’ compensation insurer is liable to an injured worker for any injury which she sustains by accident arising out of and in the course of her employment. La. R.S. 22:1031. This includes the employer’s duty to furnish all medical treatment and services necessitated by the work related injury. La. R.S. 22:1203.
There is no dispute that the Claimant’s injury was work related or that her disability resulted from the work-related injury. Nevertheless, Maryland contends that it should not pay for the Claimant's third surgery, relying on La. R.S. 22:1142, because she did not get prior approval for the surgery. We disagree.
La. R.S. 22:1142 provides in pertinent part:
LB. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemer-gency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
[[Image here]]
D. Fees and expenses. If the payor has not consented to the request to incur more than a total of seven hundred fifty dollars for any and all nonemergen-cy diagnostic testing or treatment when such consent is required by this Section, and it is determined by a court having jurisdiction in an action brought either by the employee or the health care provider that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee or health care provider bringing the action for reasonable attorney fees related to this dispute and to the employee for any medical expenses so incurred by him for an aggravation of the employee’s condition resulting from the withholding of such health care provider services.
E. Exception. In the event that the payor has denied that the employee’s injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
Maryland relies on Section B in support of its argument that it is not liable for the Claimant’s medical expenses for her last *175 surgery, or that its liability is limited to $750, because it did not authorize the surgery.
The Claimant relies on Section E as providing an exception to Maryland’s position where, as here, the Claimant sought authorization repeatedly and it was refused.
|7We have had previous occasion to speak on the applicability of the exception created in Section E of La. R.S. 23:1142. In interpreting Section E, this court has held that the insurance carrier’s refusal to authorize medical treatment constitutes a denial of compensability as provided in section E and, therefore, no approval from the payor is required. Barron v. First Lake Properties, Inc., 93-902 (La.App. 5th Cir. 3/29/94), 636 So.2d 970.
In this case, the Claimant first sought approval for the third surgery in the latter part of 1997. Maryland refused approval and requested a second opinion. The second opinion was secured in late January of 1998 and authorization was again refused. Maryland requested time to apply to the OWC for an IME. The OWC refused Maryland’s request for an IME in April of 1998. The surgery was again scheduled and Maryland again refused authorization. The Claimant was in extreme pain and her treating physician thought that the need for the surgery was immediate. Maryland again refused authorization for the surgery. The surgery was performed some 6 months after the initial request and after numerous refusals of authorization by Maryland. Based on the forgoing, and relying on Barron v. First Lake Properties, supra, we find that the actions of Maryland constituted a denial of compensability under La. R.S. 23:1142(E), thereby providing an exception to Section B which otherwise requires pri- or authorization for medical treatment by the employer or the compensation insurer. The belated notice of an IME on the eve of the surgery without proof that the Claimant received the notice does not alter our view of the case.
Furthermore, the Claimant’s treating physician stated that the treatment was immediately necessary. The Claimant testified that she received immediate relief from the surgery. There was no evidence presented to the contrary.
IsTherefore, the ruling by the OWC judge that the Claimant could not be reimbursed for her remaining medical expenses from the third surgery is reversed. The appropriate amount for reimbursement, as required by law, shall be set by the OWC judge on remand.
The Claimant also sought reimbursement for medical treatment and expenses which she had incurred prior to the third surgery. Recovery for those was denied because “no evidence was presented that either Claimant or someone in her immediate family had paid these bills” and because “there was no evidence to connect these bills to the December 14, 1992 accident.” [1]
The problem with consideration of this issue on appeal lies in the procedural posture of the case. When the case was called for hearing, the trial judge inquired about exhibits. The Claimant stated that she had a binder of exhibits and Maryland stated that it had a binder. The trial judge asked if there were any objection by opposing parties to the exhibits and they each responded that they had no objection. The exhibits were admitted into evidence without explanation and without any foundation. Thus, we find that the exhibits were improperly admitted into evidence and cannot support either the Claimant’s or Maryland’s position. Therefore, to the extent the judgment of the OWC denied the Claimant reimbursement for these bills, it is reversed and the case is remanded for a full hearing on any reimbursement *176 claims for medical expenses related to the work injury.
The Claimant also makes a request on appeal for attorney fees and penalties for Maryland’s arbitrary and capricious refusal to pay the past medical 19bills. The trial judge did not rale on this issue. Like the claim for the medical expenses themselves, it is impossible to determine, at this juncture of the case and based on the record before us, whether the Claimant is entitled to such attorney fees and penalties. On remand, the OWC judge can make that determination after considering all the evidence pertinent thereto.
Accordingly, we reverse the judgment of the OWC and remand the case for further proceeding consistent with law and the views expressed herein. Costs of appeal are assessed to Maryland.
REVERSED AND REMANDED.

. But see to the contrary Augustus v. St. Mary Par., 95-2498 (La.App. 1** Cir. 6/28/96), 676 So.2d 1144, Stelly v. United Parcel Service, 600 So.2d 156 (La.App. 3rd Cir.1992) & Jolibois v. Hartford Acc. & Ind. Co., 486 So.2d 283 (La.App. 3rd Cir.1986).