# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 06-469


YVONNE LOUVIERE

VERSUS

FOOD & FUN, INC.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT  9
PARISH OF IBERIA, NO. 04-07966
ELIZABETH CLAIRE LANIER, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*


### JOHN D. SAUNDERS
### JUDGE

\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese,
Judges.

**Pickett, J., concurs.**

**Genovese, J., concurs.**

**REVERSED.**


**Christopher Kelly Lightfoot**
**Hailey, McNamara, Hall, Larmann, & Papale, L.L.P.**
**One Galleria Blvd., Suite 1400**
**Metairie, LA 70001**
**(504) 836-6500**
**Counsel for Defendant/Appellee:**
**Food & Fun, Inc.**

**David Russell Bankston**
**Attorney at Law**
**2701 Johnston St., Suite 301**
**Lafayette, LA 70503**
**(337) 232-1444**
**Counsel for Plaintiff/Appellant:**
**Yvonne Louviere**

**SAUNDERS, Judge.**

On May 10, 1996, Claimant, Yvonne Louviere, slipped and fell, injuring her back during the course and scope of her employment with Appellee, Food & Fun, Inc. After conservative treatment failed to alleviate Claimant's pain, her treating physician recommended surgery as a treatment option. After requesting an independent medical evaluation (IME) and a subsequent second medical opinion, Appellee denied Claimant authorization to proceed with the surgery on the basis of her psychological state. Over the next seven years, Claimant continued to receive conservative treatment from various doctors, and Appellee continued to refuse authorization for the procedure. Claimant eventually took out a second mortgage on her home to pay for the procedure, and it was performed on January 30, 2004. Claimant filed a Disputed Claim for Compensation with the Office of Workers' Compensation on October 29, 2004, and both parties subsequently filed cross motions for summary judgment. After the hearing on the motions, the trial court rendered a judgment granting summary judgment in favor of Food & Fun, Inc., denying Claimant's motion for summary judgment, and dismissing Claimant's 1008 claim. Claimant now appeals.

**FACTS AND PROCEDURAL HISTORY**

Claimant, Yvonne Louviere, was employed by Food & Fun, Inc. as a cashier at a New Iberia convenience store on May 10, 1996 when she slipped and fell during the course and scope of her employment, injuring her lower back. Immediately after the accident, Claimant reported the injury and was taken to the emergency room at Lafayette General Medical Center for treatment.

Claimant was evaluated by Dr. Louis C. Blanda, an orthopedist, on July 9, 1996. On July 30, 1996, an MRI ordered by Dr. Blanda revealed Claimant suffered

a herniated disc at the L4-5 level. On December 5, 1996, after a myleogram showed disc bulging, Dr. Blanda referred Claimant to a neurologist, Dr. Daniel L. Hodges, for treatment pursuant to a rehabilitation and pain management program. However, Dr. Hodges was ultimately unable to assist Claimant with pain management, and returned her to Dr. Blanda's care on January 28, 1997 in order to discuss possible surgical options.

On March 4, 1997, a second MRI showed Claimant still had a persistent L4-5 disc herniation. Additionally, Dr. Blanda noted that the disc space was beginning to narrow, and some instability was starting to develop. After evaluating the results of the MRI, Dr. Blanda first suggested surgery as a treatment option. He recommended a discectomy and posterior lumber interbody fusion at the L4-5 level, and sought written authorization to proceed with the procedure.

Upon receiving Claimant's request for approval of the surgery, Appellee sought a second medical opinion from Dr. J. Frazer Gaar. After reviewing Claimant's records, Dr. Gaar stated in his report that there was evidence of a degenerative disc disease and desiccation at the L4-5 space, as well as bulging at the L4-5 level. However, he stated that he was reluctant to recommend surgery based on the lack of clinical correlation, as there were many non-physiological signs.

On July 14, 1997, Dr. Clark Gunderson, an orthopedic surgeon appointed by the Office of Workers' Compensation to perform an independent medical evaluation (IME) and render an opinion regarding the necessity of the proposed surgery, evaluated Claimant and recommended taking a non-surgical approach to her treatment, including pain management. Because Dr. Gunderson disagreed with the need for surgery, on December 2, 1997 Appellee denied Claimant authorization.

2

Dr. Gunderson performed a second IME on January 6, 1998 and again disagreed with Dr. Blanda's recommendation that Claimant undergo the lumbar surgery, stating in his report that he was more concerned that Claimant was not a good candidate for surgery from a psychological standpoint. Claimant was then referred to Louisiana Pain Management for treatment by Dr. Sanjiv K. Jindia.

Claimant first saw Dr. Jindia for a physical examination on March 26, 1998, after which Dr. Jindia recommended a series of three epidural injections near the site of the disc herniation in order to reduce her pain. However, Claimant completed the injection series with minimal results. Dr. Jindia recommended that Claimant lose weight, strengthen her back, and increase her activity. He stated in his report, dated September 16, 1998, that he was relatively unsuccessful in assisting her with pain management, and that he was returning her to the care of Dr. Blanda for follow-up to determine whether a surgical option was necessary.

Appellee sought a second medical opinion from Dr. Gaar on November 17, 1999. In his report, Dr. Gaar stated that the MRI again revealed a degenerative lumbar disc disease at the L4-5 level. He stated that he could not tell whether surgical intervention would help Claimant. He further stated that he continued to feel that there was evidence of non-physiologic pain behavior.

Dr. Gunderson performed yet another IME on April 13, 2003. In his report, he noted that an MRI, taken on March 20, 2000, shows dehydrated discs at L3-4 and L4-5. He recommended that Claimant undergo a psychological evaluation by Dr. Cole, before recommending any surgery. He stated that upon completion of such evaluation, if Claimant's psychodynamics were found to be "appropriate," then

3

perhaps an interbody fusion would be the proper procedure. However, he emphasized that the surgery would not be appropriate prior to psychological testing.

Pursuant to Dr. Gunderson's recommendation, Claimant underwent a psychological evaluation on June 21, 2000 by Dr. Jimmie C. Cole. In his report dated June 27, 2000, Dr. Cole reported that Claimant suffered from "depression in the near severe range" and somatoform pain disorder. He concluded that with Claimant's condition and the psychological overlay, he did not believe she was a good candidate for surgical intervention for pain relief.

On September 1, 2000, Dr. Gunderson reviewed Claimant's psychological evaluation report, and agreed with Dr. Cole's recommendation against surgery, stating that because of Claimant's severe depression, she did not have the pathology amenable to surgery.

After further conservative treatment by Dr. Blanda, authorization to proceed with the surgery was requested on June 19, 2001, but was again denied.

Dr. Gaar last saw Claimant on August 28, 2002. In his report based on this final evaluation, Dr. Gaar noted that an MRI performed on June 6, 2001 revealed a tiny L3-4 posterior central disc protrusion, as well as diffuse bulging at L4-5. There were signs of "early degeneration at L3-4 with some mild broad-based bulging," and the L4-5 disc showed "desiccation and degeneration at the L4-5 with broad-based bulging or protrusion with a small central high intensity zone." However, Dr. Gaar's opinion was unchanged as to his recommendation against surgery; he stated that he continued to feel that Claimant was not a good candidate for surgical intervention due to too much psychological overlay with non-physiologic pain behavior.

4

On January 23, 2004, over seven years after the occurrence of the injury, Claimant took out a second mortgage on her home and made a payment of $12,000.00 to Dr. Blanda's office in order to proceed with the surgery. The lumbar fusion surgery was performed on January 30, 2004, and Claimant was discharged from the hospital on February 4, 2004.

On October 29, 2004, Claimant filed a Disputed Claim for Compensation with the Office of Workers' Compensation against her employer, Food & Fun, Inc., seeking reimbursement of medical expenses related to the lumbar surgery performed by Dr. Blanda in addition to penalties and attorney fees, claiming that Defendant's denial of payment was arbitrary and capricious and without reasonable cause. Appellee filed an answer on December 23, 2004, asserting that Claimant's lumbar surgery was not reasonable and necessary medical treatment, and therefore, the Claimant was limited to recovering $750.00 under La.R.S. 23:1021, et seq.

The parties filed cross motions for summary judgment which were heard on July 21, 2005. After taking the matter under advisement, the Workers' Compensation Court stated in its written reasons for judgment, issued on February 7, 2006, that although the findings of an IME are not conclusive, they should be given significant weight. The court found Claimant did not meet her initial burden of proof in establishing that there was a medical necessity for the procedure at the time it was performed. Therefore, the court found that Claimant's surgery was an unauthorized, non-emergency medical treatment, and was subject to the $750.00 medical reimbursement cap under La.R.S. 23:1142. Accordingly, a judgment granting the motion for summary judgment filed by Defendant, Food & Fun, Inc., and denying the motion for summary judgment filed by Claimant, Yvonne Louviere, was rendered on

5

October 20, 2005. The judgment dismissed Claimant's 1008 claim with prejudice; however, it ordered Defendant to pay the $750.00 medical reimbursement cap to Claimant for the unauthorized, non-emergency medical treatment under La.R.S. 23:1142(B)(1). Neither party was assessed attorney fees or penalties. Claimant now appeals.

**ASSIGNMENTS OF ERROR**

1) The trial court erred in granting the motion for summary judgment filed by the employer, and denying the motion for summary judgment filed by Yvonne Louviere, and allowing medical reimbursement limited to the $750.00 cap for unauthorized non-emergency treatment.

2) The trial court erred in denying Yvonne Louviere penalties and attorney fees.

**STANDARD OF REVIEW**

Appellate courts conduct a *de novo* review of rulings on motions for summary judgment. "It is well established that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Alfred Palma, Inc. v. Crane Servs. Inc.,* 03-614, p.3 (La.App. 3 Cir. 11/5/03), 858 So.2d 772, 774, quoting *Shelton v. Standard/700 Assocs.*, 01-587, p.5 (La. 10/16/01), 798 So.2d 60, 64-65; La.Code Civ.P. art. 966(B).

**LAW AND ANALYSIS**

<u>Assignment of Error No. 1:</u>

Claimant argues that the trial court erred in denying her motion for summary judgment, granting Appellee's motion for summary judgment, and limiting her

6

medical reimbursement to $750.00 under La.R.S. 23:1142. Louisiana Revised Statutes

23:1142 states:

**A. Definitions.** For the purposes of this Section, the following terms shall have the following meanings unless the context clearly indicates otherwise:

(1) "Payor" shall mean the entity responsible, whether by law or contract, for the payment of the medical expenses incurred by a claimant as a result of a work related injury.

**B. Nonemergency care.** (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

(2)(a) When the payor has agreed to the diagnostic testing or treatment, the health care provider shall not issue any demand for payment to the employee or his family until the payor denies liability for the diagnostic testing or treatment. Notwithstanding the foregoing, the health care provider may reasonably communicate with the employee or his attorney or representative for the purpose of pursuing its claim against the payor.

(b) A health care provider who knowingly and willfully violates this Paragraph may be ordered by the workers' compensation judge to pay penalties not to exceed two hundred fifty dollars per violation plus reasonable attorney fees. The penalty shall not exceed one thousand dollars for any demand for payment to an employee or his family which is issued after the health care provider has been penalized for a previous demand for payment to that employee or his family.

**C. Emergency care.** (1) In no event shall prior consent be required for any emergency procedure or treatment deemed *immediately necessary* by the treating health care provider. Any health care provider who

7

authorizes or orders emergency diagnostic testing or treatment, when said diagnostic testing or treatment is held not to have been of an emergency nature, shall be responsible for all of the charges incurred in such diagnostic testing or treatment. Said health care provider shall bear the burden of proving the emergency nature of the diagnostic testing or treatment.

(2) Fees for those services of the health care provider held not to have been of an emergency nature shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the treatment or diagnostic testing by the health care provider, except as provided in R.S. 23:1272(D).

**D. Fees and expenses.** If the payor has not consented to the request to incur more than a total of seven hundred fifty dollars for any and all nonemergency diagnostic testing or treatment when such consent is required by this Section, and it is determined by a court having jurisdiction in an action brought either by the employee or the health care provider that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee or health care provider bringing the action for reasonable attorney fees related to this dispute and to the employee for any medical expenses so incurred by him for an aggravation of the employee's condition resulting from the withholding of such health care provider services.

**E. Exception.** In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.

[Emphasis added.]

Claimant asserts that no prior authorization for the procedure was required, as Appellee's repeated denial of authorization of the procedure constitutes a denial of compensability of the injury, and therefore falls under the exception to the statute found in subsection E. Claimant presents a line of cases which support her argument.

8

In *Sneed v. RTA/TMSEL*, 03-1532 (La.App. 4 Cir. 2/25/04), 869 So.2d 254, the employee claimant sustained injuries to her cervical spine. After conservative treatment was unsuccessful, the claimant's neurosurgeon recommended a microsurgical discectomy and a medical branch neurotomy to alleviate her pain. However, an independent medical examiner appointed to evaluate the claimant recommended further therapy in lieu of surgery, based on the fact that the success rate of the recommended procedure was "questionable." *Id*. at 262. The employer subsequently denied the request for surgery. After the denial of authorization, the claimant's physician recommended a different procedure, an IDET; however, authorization for that procedure was denied as well. Several small procedures were performed; however, none successfully alleviated the patient's pain. Almost two years after the occurrence of the accident, the claimant underwent the neurotomy, the procedure that her neurosurgeon initially recommended, without first obtaining approval from her employer. The employer refused to pay for the procedure, stating that it was not liable, as the surgery was not authorized. *Id.*

The court in *Sneed* found that the employer's denial of claimant's workers' compensation request for surgery amounted to denial of liability for claimant's injury and, therefore, the $750.00 cap imposed by La.R.S. 23:4211 was not applicable. Citing *Gros v. Gaudin*, 00-1015 (La.App. 5 Cir. 10/31/99), 773 So.2d 172, *writ denied*, 00-3242 (La. 1/26/01), 782 So.2d 635, and *Barron v. First Lake Properties, Inc.*, 93-902 (La.App. 5 Cir. 3/29/94), 636 So.2d 970, the court went on to state that the compensability of a claimant's work related injury may be generally admitted, while authorization for a specific medical procedure is denied, amounting to denial of

compensability under La.R.S. 23:1142(E). *Id.* The court found the neurotomy medically necessary, stating that two years had passed since the occurrence of the injury, the claimant had undergone conservative treatment without any benefit, and it was apparent that the treating physician was not "rushing to have the patient undergo unnecessary surgery, but he intended to attempt to alleviate her back pain." *Id.* at 262.

In, *Gros v. Gaudin*, 773 So.2d at 172, the claimant sustained a severe back injury when she slipped and fell while working in a law office. She underwent two surgeries in five years to repair the damage; however, she remained disabled. Claimant's treating physician then recommended a third surgery, a grafting procedure, to alleviate her severe pain. The claimant's employer refused to authorize the procedure and sought a second medical opinion. Although the employer's physician acknowledged that the "claimant had severe problems and was at this time disabled," he opined that another surgery would not benefit her. *Id.* at 173. The claimant's treating physician recommended surgery almost a year later, and the employer again denied authorization for the procedure. The surgery was eventually performed after Medicare coverage was obtained through social security. Citing *Barron*, 636 So.2d at 973, the court found that the employer's actions constituted a denial of compensability under La.R.S. 23:1142(E) and, therefore, no prior authorization was required for the procedure. The court noted that the claimant was experiencing extreme pain, and that the procedure was "performed some 6 months after the initial request and after numerous requests for authorization." *Id.* at 175.

In the instant case, as in *Gros* and *Sneed*, the work related injury is generally admitted; however, Appellant repeatedly denied authorization for specific medical

10

treatment, namely, the lumbar fusion.  Authorization in *Gros* and *Sneed* was denied based on the questionable success of the surgery.  In this case, Dr. Gaar stated,  "I think we all agree that she did have a degenerative lumbar disc disease early on from the MRI studies etc.  The question was as to whether she would benefit from a surgical procedure or not."

Claimant's situation is clearly more profound than that of the claimant in either the *Gros* or the *Sneed* case.  She underwent conservative treatment for seven years, saw three orthopedic surgeons, two pain management specialists, and a psychologist, went through numerous evaluations and medical exams, was in severe pain and was barely able to function.  Additionally, her condition was deteriorating over time.  Yet, although all pre- and post-operative reports acknowledged the injury and, its progression, authorization for the procedure was repeatedly denied.  It is clear from the record that the surgery was medically necessary, especially in light of the uncontradicted post-surgery testimony of Dr. Blanda that Claimant's condition had worsened.  We echo the observation in *Sneed* that the physician was not "rushing to have the patient undergo unnecessary surgery, but he  intended to attempt to alleviate her back pain."   We find that Appellee's repeated denial of authorization for Claimant's procedure constitutes a denial of compensability under La.R.S. 23:1142(E), and therefore, prior authorization is not required.  Accordingly, we find Appellee liable for all medical expenses incurred.

The court would also note that La.R.S. 23:1142(C) dispenses with the need for prior approval in cases of emergency, or where treatment is "immediately necessary."  Defendant argues strenuously that there is no emergency, as further delay would not

11

cause Claimant more damage. They do not discuss the phrase, "immediately necessary." In the instant case, we consider Dr. Blanda's testimony that Claimant had a herniated disc at L3-4 and a herniated disc at L4-5, as well as considerable instability at the L4-5 level, clearly shows that the procedure was necessary at the time it was performed. The fact that he had been treating Claimant for over seven years and had run out of treatment options clearly establishes that further delay would be unreasonable. Then, the "immediate" factor is established. Accordingly, we hold that the surgery was "immediately necessary" and therefore, no approval was required.

**Assignment of Error No.2:**

Claimant argues that upon reversal of the ruling of the trial court, she is entitled to attorney fees and penalties. Louisiana Revised Statutes 23:1142(D) permits the award of penalties and attorney fees by a court if the employer or insurer was arbitrary and capricious, or without probable cause, in withholding its consent for authorization. We do not find that Appellee was arbitrary and capricious in withholding its consent, as there was arguably an excuse for denying authorization. Accordingly, Claimant is not entitled to penalties and attorney fees.

**CONCLUSION**

After our review of the record, we find that Claimant's lumbar surgery was medically necessary, and Appellee's repeated denial of authorization for the procedure amounts to a denial of compensability under La.R.S. 23:1142(E). Therefore, prior approval for Claimant's surgery was not required. Accordingly, Appellee is liable for all expenses associated with the procedure. Additionally, we note that Claimant's procedure is also "immediately necessary" under La.R.S. 23:1142(C) and that further

12

delay would be unreasonable. However, we do not find Appellee arbitrary and capricious in its denial of authorization.

The judgment of the trial court is reversed. Costs of the appeal are assessed against Appellees.

**REVERSED.**