GASKINS, J.
lain this workers’ compensation case, the employer appeals the denial of its motion to dismiss. In its motion, the employer alleged that the claimant failed to obtain a *1054 court-ordered neuropathy workup within a reasonable period of time and should be penalized. We affirm in part and amend in part.
FACTS
In March 2002, the claimant, Patricia Brown, injured her right knee, leg and foot while working for the East Carroll Parish Police Jury. She slipped in a puddle of water at the Head Start office; the puddle was the result of a leaky ceiling.
In June 2004, the claimant filed a disputed claim for compensation with the Office of Workers’ Compensation (OWC). She asserted that the employer refused to pay her medical bills or authorize her to see an | sorthopedic doctor and a neurologist for treatment of her right knee, leg and foot. She requested that the employer be ordered to pay her medical bills relating to the accident and to pay for her to be seen by an orthopedic doctor and a neurologist. The employer answered with a general denial.
The parties stipulated that the claimant injured her right knee while performing services arising out of and in the course and scope of her employment with the employer; that some compensation and medical benefits were paid; and that she was released to return to work without restrictions by her treating physician, Dr. Douglas Brown, an orthopedist.[1] The matter was tried on the issues of the nature and extent of her disability, the employee’s entitlement to payment of medical expenses, an order for her to be examined and treated by a neurologist of her choice, and her request for penalties and attorney fees.
Trial was continued on several occasions pursuant to motions by both sides. The matter was finally tried on January 5, 2007. The evidence showed that, following her March 2002 injury, the claimant was initially released by Dr. Brown to return to work in May 2002. However, she returned to the doctor in January 2003, complaining of numbness extending from her right knee to foot. She was found to have peripheral neuropathy in her lower extremities. In late January 2003, upon Dr. Brown’s referral, the claimant |4saw Dr. Vipul Shelat, a neurologist, whose report stated that she should have “a neuropathy work-up.” The record did not indicate that such a workup had been done.
The workers’ compensation judge (WCJ) ordered the employer to pay certain medical bills of the claimant that related to treatment of her right knee, leg or foot following the accident. The WCJ also found the claimant was entitled to have Dr. Lawrence Chenier as her physician of choice in general medicine. Penalties and attorney fees were denied. Most importantly for purposes of the instant appeal, the WCJ also ruled that the claimant was “entitled to a neuropathy work-up, as suggested by Dr. Shelat, to be performed by a neurologist designated by claimant.”[2] Judgment was signed February 8, 2007.
On October 2, 2009, the employer filed a motion to dismiss for failure to comply with the judgment of the court. It asserted that in more than two years, the claimant had failed to obtain the court-ordered neuropathy workup, despite the employer’s efforts to assist her. The employer stated that it had recently learned that the doctor selected by the claimant as her neurologist, Dr. Gonzalo Hidalgo, did not accept workers’ compensation patients. Consequently, pursuant to the WCJ’s continuing *1055 jurisdiction under La. R.S. 28:1310.8, the employer requested that the claimant’s claim for | ¡¡benefits be dismissed with prejudice due to her failure to comply with the judgment in a reasonable amount of time. In support of its argument, the employer stated that since it would be sanctioned if it had failed to comply with the court’s order, the claimant should be held to the same standard. Also, the employer contends that it would be prejudiced if the claimant were permitted to undergo the neuropathy workup now due to the substantial amount of time that had passed since the 2002 injury.
The claimant filed an opposition in which she asserted that she had done all she could to comply with the court’s judgment. Specifically, she stated that she repeatedly encountered complications in making appointments (e.g., a doctor who relocated after Hurricane Katrina, her inability to make payment arrangements). She denied being told that Dr. Hidalgo, who was located in Alexandria, Louisiana, no longer accepted workers’ compensation cases until June 2009. The claimant further asserted that the WCJ was authorized under La. R.S. 23:1810.8 to make all appropriate orders to make her whole.
The matter was heard on November 6, 2009. The claimant testified about her many efforts to obtain a neuropathy workup after it was ordered, the exchanges of letters between the attorneys, the necessity of referrals, and the confounding issue of payment for the appointments. She stated that | r,every time she was asked about payment for the exam and she mentioned workers’ compensation, the doctors’ offices said they were full or could not help her. She emphatically denied the assertion that Dr. Hidalgo’s office told her several times that his office did not do workers’ compensation exams.
Around the fall of 2009, the claimant found a neurologist in Vicksburg, Mississippi, Dr. Mohammed Ahmed. He agreed to see her; however, due to the difficulties in getting paid, he would not accept workers’ compensation and she had to pay him out of pocket. The claimant testified that she was required to make a $500 down payment for an $1,800 MRI in October 2009. In order to get a neuropathy workup on her right leg, she testified that it would cost $1,375 and that she would have to pay 30 percent, or about $414, as a down payment. She also stated that she has continued to see Dr. Chenier in Tallu-lah and that he helped her stay as comfortable as possible. She said she paid for his services herself because no one asked her about seeing him.
The WCJ denied the employer’s motion to dismiss. She noted that all the parties had made efforts toward getting the neu-ropathy workup done; however, their efforts had been frustrated by the chosen doctors’ refusals to accept workers’ compensation or their confusion as to what a neuropathy workup included. The WCJ also ruled that the employer was required to pay 17the total cost of the MRI done on October 28, 2009, to the River Region Health System and that the claimant was entitled to be evaluated by Dr. Bernie McHugh, a neurosurgeon, at the employer’s cost. In so ruling, the WCJ stated that since it appeared Dr. Ahmed recommended the MRI as part of the neuropa-thy workup, it was included in the judgment. Additionally, the WCJ stated that she would not hold it against the claimant that she went to Mississippi to seek help. The WCJ specifically found the claimant to be credible in her account of unsuccessfully trying to obtain assistance from various doctors in Louisiana. As to her appointment of Dr. McHugh, the WCJ noted that he was a Louisiana doctor who accepted workers’ compensation patients and that payment to him would be made pursuant to the Louisiana workers’ compensation *1056 fee schedule. Judgment was signed November 24, 2009.
The employer applied for supervisory writs to this court. We treated the writ application as a motion for appeal and remanded the matter to the workers’ compensation court for perfection of the appeal.
MOTION TO DISMISS
The employer contends that the WCJ erred in not granting its motion to dismiss. It also contends that res judicata should have prevented the WCJ from modifying its prior judgment.
[[Image here]]
Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. Player v. International Paper Company, 39,254 (La.App.2d Cir.1/28/05), 892 So.2d 781. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993).
Workers’ compensation judgments are treated differently from ordinary judgments. This is due to the fact that if the rules of finality applied to ordinary civil judgments are applied to workers’ compensation judgments, the flexibility of the workers’ compensation system would be greatly restricted. Falgout v. Dealers Truck Equipment Co., 1998-3150 (La.10/19/99), 748 So.2d 399. The workers’ compensation statute addresses this difference, providing the workers’ compensation judge with continuing “power and jurisdiction” to modify former findings or orders regarding entitlement to compensation, La. R.S. 23:1310.8(A), and to modify prior compensation awards by “ending, diminishing, or increasing” such awards when “a change in conditions” is established. La. R.S. 23:1310.8(B). 19Importantly, this statute provides that “[a] judgment denying benefits is res judicata after the claimant has exhausted his rights of appeal,” but it does not address a judgment awarding benefits. La. R.S. 23:1310.8(E). Rivers v. Bo Ezernack Hauling Contractor, LLC, 2009-1495 (La.App. 3d Cir.5/5/10), 37 So.3d 1088.
Where the legislature has expressly provided that an award or judgment can be subject to a claim of modification, res judicata does not apply. Falgout, 1998-3150 at p. 9, 748 So.2d at 406; Degrasse v. Elevating Boats, Inc., 2002-2370 (La.App. 4th Cir.6/11/03), 850 So.2d 40, writ denied, 2003-1852 (La.10/31/03), 857 So.2d 479. Pursuant to La. R.S. 23:1310.8(A)(1), the WCJ has continuing jurisdiction and may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified. Romero v. Northhrop Grumman Corp., 2006-1210 (La. App. 3d Cir.3/7/07), 952 So.2d 855.
The nature of workers’ compensation proceedings require the WCJ to retain jurisdiction in order to continuously assess the employee’s condition. Furthermore, because the WCJ’s adjudication imposes an ongoing obligation on the employer, it retains jurisdiction to address continuous violations. Thus, these unique aspects of workers’ compensation create confusion as to | inm judicata’s application in workers’ compensation proceedings. Metoyer v. Roy O. Martin, Inc., 2003-1540 (La.App. 3d Cir.12/1/04), 895 So.2d 552, wit denied, 2005-1027 (La.6/3/05), 903 So.2d 467.

Discussion

The employer contends that the WCJ erred in not granting its motion to dismiss. Additionally, the employer ar *1057 gues that the WCJ erred in not finding that the prior judgment was res judicata. However, this is a workers’ compensation case. As discussed above, the WCJ retains continuing jurisdiction in such a case to make necessary modifications.
Here, in order to facilitate implementation of the original judgment which ordered that the claimant was to receive a neuropathy workup, the WCJ took steps to move the matter forward. The WCJ was impressed with the claimant’s credibility and obviously believed that she had earnestly tried to fulfill the obligation imposed upon her by the judgment, only to be frustrated at every turn. Primarily, the claimant repeatedly encountered difficulties finding a neurologist who was willing to accept a workers’ compensation patient such as herself. In order to ensure that the claimant received the benefit of the neuropathy workup recommended by Dr. Shelat, the WCJ exercised her discretion and continuing jurisdiction. She appointed Dr. McHugh, a neurosurgeon — not a neurologist — who she knew was ^willing to accept workers’ compensation patients. The WCJ was aware that his appointment would remove the uncertainties surrounding this matter and allow it to finally go forward. Furthermore, in appointing a Louisiana doctor like Dr. McHugh, the WCJ also intended to safeguard the employer and ensure that future payments would be made under the Louisiana workers’ compensation fee schedule.
We find no error in the WCJ’s decision to deny the employer’s motion to dismiss. Nor do we find res judicata applicable to the facts set forth before us in this case.
MEDICAL EXPENSES
The employer also claims that the WCJ erred in ordering that it pay the full amount for the MRI ordered by Dr. Ahmed in Mississippi. The employer argues that under La. R.S. 23:1142, there is a $750 cap on the amount it could be ordered to pay for a nonemergency procedure such as the MRI.
An employer must furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of the state as legal. La. R.S. 23:1203(A); Pardee v. Forest Haven Nursing Home, 42,321 (La.App.2d Cir.6/20/07), 960 So.2d 1216. Jurisprudence provides that an employee seeking payment for medical 112or surgical treatment must prove that the expenses are reasonably necessary for treatment of a medical condition caused by a work-related injury. Pardee v. Forest Haven Nursing Home, supra.
Generally, an employee must receive prior approval from his employer before he seeks nonemergency medical attention for a work-related accident or injury. INA v. Hayes, 93-1648 (La.App. 3d Cir.8/31/94), 643 So.2d 190, writ denied, 94-2471 (La.12/9/94), 647 So.2d 1113. La. R.S. 23:1142 provides, in pertinent part:
B. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemer-gency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer’s workers’ compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
(2)(a) When the payor has agreed to the diagnostic testing or treatment, the *1058 health care provider shall not issue any demand for payment to the employee or his family until the payor denies liability for the diagnostic testing or treatment. Notwithstanding the foregoing, the health care provider may reasonably communicate with the employee or his attorney or representative for the purpose of pursuing its claim against the payor.
[[Image here]]
E. Exception. In the event that the payor has denied that the employee’s injury is compensable under this Chapter, then no | ^approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
Thus, under the exception set forth in La. R.S. 23:1142(E), when an employer or insurer has denied that a claimant’s injury is compensable, the statutory cap does not apply. Washington v. Lyons Specialty Company, 96 0263 (La.App. 1st Cir.11/8/96), 683 So.2d 367, writ denied, 96-2944 (La.1/31/97), 687 So.2d 408. When an employer denies the claim from the beginning, it must pay the actual medical expenses incurred and cannot avail itself of the fee schedule. This is because the claimant is then forced to fund the costs of medical treatment himself and because, if the employer denies the claim from the outset, it has no right to preap-prove any treatment. Lemons v. Georgia Pacific Corporation, 42,950 (La.App.2d Cir.2/13/08), 976 So.2d 307, writs denied, 2008-0587 (La.5/2/08), 979 So.2d 1288, and 2008-0590 (La.5/2/08), 979 So.2d 1289; Spires v. Raymond Westbrook Logging, 43,690 (La.App.2d Cir.10/22/08), 997 So.2d 175, writ denied, 2008-2771 (La.2/20/09), 1 So.3d 495.
In interpreting La. R.S. 23:1142(E), it has been held that an insurance carrier’s refusal to authorize medical treatment can constitute a denial of compensability as provided in section E and, therefore, no approval from the payor may be required. Gros v. Gaudin, 2000-1015 (La.App. 5th Cir.10/31/00), 773 So.2d 172, writ denied, 2000-3242 (La.1/26/01) 782 So.2d [14635; Sneed v. RTA/TMSEL, 2003-1532 (La. App. 4th Cir.2/25/04), 869 So.2d 254. If the compensability of the claimant’s work-related injury was generally admitted but authorization for a specific medical treatment was denied, the refusal to authorize the medical treatment constituted a denial of compensability under La. R.S. 23:1142(E). Louviere v. Food & Fun, Inc., 2006-469 (La.App. 3d Cir.10/11/06), 941 So.2d 155.
In order to conclude that the statutory cap does not apply, we must find that the employer denied compensability of the claimant’s injury or denied authorization of a specific procedure. The MRI at issue was apparently ordered by Dr. Ahmed, the neurologist that the claimant arranged to see in Mississippi after encountering difficulties in securing an appointment with a Louisiana neurologist. The claimant went to see Dr. Ahmed for the express purpose of implementing the WCJ’s order to obtain a neuropathy workup; Dr. Ahmed apparently believed that such a workup included an MRI. Although the employer initially denied that the claimant suffered a com-pensable injury early in the proceedings, that was no longer the case. The employer did not deny authorization for the claimant to undergo the MRI; it was apparently unaware that she was seeing a Mississippi neurologist and was never given the opportunity to approve — or disapprove — of the procedure.
| ir,Given the unusual facts presented here, we are unable to say that the employer was not entitled to the benefit of the statutory $750 cap as to the MRI. Accordingly, we find that the WCJ erred in this regard and amend the judgment.
*1059 CONCLUSION
The decision of the WCJ is affirmed in part and amended in part. As to the MRI expenses, we find that the WCJ erred in finding that the employer was not entitled to the $750 statutory cap. Accordingly, that portion of the judgment is amended to order the employer to pay $750 of the cost of the MRI.
In all other respects, the judgment of the WCJ is affirmed. Costs of this appeal are assessed between the parties equally.
AFFIRMED IN PART, AMENDED IN PART.
STEWART, J., concurs with reasons.

. The employer conceded in its August 17, 2004, pretrial statement that the employee's injury was work related.

. In so ordering, the WCJ noted that the claimant was consistent in her complaints that there was a continuing problem with her knee.