# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-747

**SHERRY DEBARGE**

**VERSUS**

**LFI OF LAKE CHARLES and**
**ACE AMERICAN INSURANCE COMPNAY**
**[(LFI OF FORT PIERCE, INC.]**

**\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**OFFICE OF WORKERS' COMPENSATION**
**DISTRICT 4, PARISH OF CALCASIEU**
**HONORABLE SAM LOWERY, WORKERS' COMPENSATION JUDGE**

**\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and J. David Painter, Judges.

**AFFIRMED AS AMENDED.**

Mark Zimmerman
4216 Lake Street
Lake Charles, LA  70605
(337) 474-1644
**Attorney for Plaintiff/Appellee**
Sherry Debarge


 Kirk L. Landry
701 Main Street
P.O. Box 1151
Baton Rouge, LA  70821
(225) 383-3796
Attorney for Defendant Appellant
LFI Fort Pierce, Inc. and ACE Insurance Company

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

DeBarge, age 53, went to work for LFI shortly after Hurricane Rita on October 5, 2005, as a laundry assistant making beds, vacuuming, taking care of soiled laundry, and doing general cleaning inside and outside of tents set up to house workers stationed in Lake Charles, Louisiana. She was injured on November 1, 2005, when her foot became entangled on some plastic attached to a bed causing her to strike her neck on a bed as she fell to the floor. LFI denied the occurrence of the injury and denied the compensability of the work injury up to the date of trial on March 2, 2011. The employer stipulated to the occurrence of the work accident at trial; but, to date, no indemnity benefits have been paid. Certain medical expenses have been paid by the employer while other related medicals have still not been paid. The employer asserts that claimant forfeited benefits because of dishonest answers to a work questionnaire when applying for the job. A panel of this court previously addressed this case in *DeBarge v. LFI Lake Charles*, 2011-1208 p. 1 (La.App. 3 Cir. 3/7/12), 87 So.3d 930, 931, wherein the court stated:

> On October 30, 2006, Sherry De Barge, in proper person, filed a Disputed Claim for Compensation (Office of Workers' Compensation Form 1008, hereafter "1008") in which she alleged that she was injured on November 1, 2005, when she became entangled in some plastic and fell, hitting her head. On December 1, 2006, counsel formally enrolled for "Employer, **LFI OF LAKE CHARLES**." That day, the WCJ signed an order enrolling counsel for "Employer, *LFI OF LAKE CHARLES*." On February 15, 2007, an answer was filed on behalf of "the Employer, Labor Finders, named as LFI of Lake Charles." Later pleadings were filed in the name of "Employer, LFI of Lake Charles." The identity of DeBarge's employer was never otherwise raised as an issue.

The Workers' Compensation Judge (WCJ) found there was "virtually no support for LFI's claim that DeBarge had forfeited her benefits under La.R.S. 23:1208.1, by denying the existence of previous neck problems dating back to 1996 on her pre-employment medical questionnaire." *Id*. at 932. The WCJ further found that: "An untrue or inaccurate statement does not equate to fraud," *Id*., and "in the nine years between DeBarge's neck complaints in 1996 and the subject accident in 2005, she had been employed performing strenuous labor." *Id*. The WCJ awarded DeBarge indemnity benefits as a result of her November 2005 on-the-job accident, and found she was entitled to "all reasonable medical treatment including all medical bills and out of pocket expenses related to the accident." *Id*. He also assessed a penalty against the employer in the amount of $8,000.00, and awarded $14,000.00 in attorney fees. The employer first appealed asserting that the judgment rendered was so lacking in decretal language as to not constitute a valid judgment, and asserted the WCJ erred in awarding recovery to DeBarge. The employer also alleged DeBarge should have been denied benefits under La.R.S. 23:1208.1, and that the WCJ erred in awarding attorney's fees and penalties. A panel of this court found the party cast in judgment was "clearly identified," *Id*. at 934, but then dismissed the appeal, and remanded it to the WCJ finding:

> The WCJ awarded temporary total disability benefits. The amount of those benefits is not specified. The judgment also failed to specify the amount of medical benefits awarded, which is a fact the court finds particularly troubling in light of LFI's second assignment of error regarding whether any party is liable for Dr. Gunderson's charges. The judgment fails to specify what amounts other than clerk's charges are being taxed as costs of court. An observer could not determine LFI's liability to DeBarge by looking at the judgment.

*DeBarge*, 87 So.3d at 934.

3

This, reasoned the panel, "renders the judgment defective and deprives us of jurisdiction, without regard to the other elements of the award." *Id.* The case was remanded on March 12, 2012. On June 4, 2012, the parties filed a Motion to Continue Remand Trial as they had agreed to mediate their dispute. The record contains a settlement dated August 3, 2012, signed by all of the parties which is made contingent "upon final approval and authorization necessary pursuant to La.R.S. 23:1271-1272." Although it appears the parties reached an out-of-court-agreement as of August 3, 2012, counsel for claimant filed notice on September 7 2012, instructing the WCJ to place the case back on the docket for hearing.[1]

On February 3, 2014, the remand was addressed by the WCJ in open court and, thereafter, on February 17, 2014, the WCJ signed a judgment. The employer, identifying itself as "Labor Finders," filed a motion for new trial asking only for re-argument. On March 31, 2014, the WCJ granted the Motion for New Trial, heard re-argument, and rendered a final judgment signed on April 15, 2014. The trial judge specifically found that defendant "is the 'undisputed' employer LFI Fort Pierce, Inc., which does business under the registered trade name of Labor Finders, and its workers' compensation insurer, ACE American Insurance Company." The WCJ then rendered a detailed written judgment which reads:

**IT IS ADJUDGED, ORDERED, AND DECREED** as follows:

1. Claimant Sherry DeBarge is entitled to and defendant LFI is responsible for paying Temporary Total Disability benefits from the date of the work-accident November 1, 2005, at the rate of $240.00 a week (based on two-thirds of the stipulated average weekly wage of $360.00), up through the date of trial and continuing in accordance with the Louisiana Compensation Act.

---

[1] A late letter arrived at this court professing to relay a compromise of this matter on earlier remand. Defendant has never filed an exception of res judicata nor has it argued compromise in the lower court or as an assignment of error on appeal. We decline to entertain this assertion of a compromise any further. This court also elects not to delay its opinion beyond its scheduled release. We further note Defendant's request for a stay was denied.

2. Claimant Sherry DeBarge is entitled to and defendant LFI is responsible for all reasonable medical benefits and treatment as a result of the November 1, 2005 work accident, including payment of all surgical expenses related to the surgery performed by Dr. Clark Gunderson, out-of-pocket medical expenses and all related medical expenses.

3. In relation to which, in regard to the specific amount of medical expenses referenced in the previous paragraph, claimant Sherry De Barge is entitled to and the defendant LFI is responsible for the following: **1. $317.96** for reimbursement of claimant's out-of-pocket expenses, per **P-4** and as clarified at the hearing on February 3, 2014 without objection; **2. $381.00** regarding the outstanding bill to Emergency Medicine Specialist, APMC, per **P-6**; and **3. $12,300.00** for reimbursement of claimant's out-of-pocket expenses in reference to her cervical surgery (by Dr. Gunderson) and treatment at Lake Charles Memorial Hospital on January 15 and 16, 2009, per **P-10**, and see **P-9**.

3.(sic) Defendant LFI's defense under La.R.S. 23:1208 is denied.

4. Defendant LFI's defense under La.R.S. 23:1042 is denied.

5. The termination of medical benefits was arbitrary and capricious and done without probable cause, thus entitling claimant to an award of $8,000.00 in penalties and an award of $14,000.00 in attorney fees. Based on fault, the penalties and attorney fees award is assessed against ACE American Insurance Company, the workers' compensation insurer of the employer, LFI Fort Pierce, Inc. which does business under the register(ed) trade name Labor Finders.

6. Defendant LFI is liable for the filing cost of $30.00, and the appropriate legal/judicial interest on the award made in claimant's favor herein.

7. Accordingly, the judgment signed on February 17, 2014 is revoked.

LFI appeals the judgment of the WCJ asserting he erred in finding the provisions of La.R.S. 23:1208.1 inapplicable and asserts, alternatively, that claimant's recovery for medical expenses is limited to a maximum of $750.00 under the provisions of La.R.S. 23:1142. LFI also assigns as error the award of attorney fees and penalties.

5

**ANALYSIS**

LFI again asserts in this appeal, though not by means of an assignment of error, that "the defendants now named in this judgment, who now appeal it, were not even the defendants in the earlier judgments," referring to LFI Fort Pierce, Inc. A panel of this court previously disposed of this issue. It is frivolous for defendant to make the assertion in this appeal that "the defendants now named in this judgment" were not the defendants named throughout this much protracted litigation. The judgment appealed from names LFI Fort Pierce, Inc. d/b/a Labor Finders, a/k/a Labor Finders of Lake Charles, and its insurer ACE American Insurance Company as parties cast in judgment. LFI's trade name has been the same since the inception of this litigation. The WCJ went to great lengths in his judgment to identify claimant's employer as he spells out in his judgment "the defendant is the "undisputed" employer LFI Fort Pierce, Inc., which does business under the registered trade name of Labor Finders . . ." He no doubt emphasized "undisputed" because there is no cogent dispute as to the identity of the claimant's employer responsible for compensation to her for the injury sustained while in its employ. The record contains an express waiver of citation and an acceptance of service by Labor Finders, the registered trade name of LFI Fort Pierce, Inc. It also contains an answer filed by Labor Finders/Labor Finders of Lake Charles. The answer did not contain a declinatory exception concerning the employer's identity. Louisiana Code of Civil Procedure Article 736 expressly provides "A person who does business under a trade name is the proper defendant in an action to enforce an obligation created by or arising out of the doing of such business." Additionally,

the Louisiana Code of Civil Procedure Article 6(A) (1) and (3) (emphasis added) provide in pertinent part:

> A.  Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding.   The exercise of this jurisdiction requires:
>
> (1) The service of process on the defendant, or on his agent for service of process, or the express waiver of citation and service under Article 1201.
>
> (2) . . .
>
> **(3) The submission of the party to the jurisdiction of the court by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception.**

The Louisiana Code of Civil Procedure provides in Article 928 (emphasis added):

> The declinatory exceptions and the dilatory exceptions *shall be pleaded prior to or in the answer* and, prior to or along with the filing of any pleading seeking relief other than entry or removal of the name of an attorney as counsel of record, extension of time within which to plead, security for costs, or dissolution of an attachment issued on the ground of the nonresidence of the defendant, and in any event, *prior to the confirmation of a default judgment.*

LFI long ago in this proceeding submitted to the jurisdiction of the workers' compensation tribunal in this matter using its trade name and failing to timely raise a declinatory exception.  At all stages of this proceeding, and in numerous filings, defendant LFI is referred to as "LFI of Lake Charles" and "Labor Finders."  In the appeal bond posted on August 9, 2011, the defendants are identified as "Defendants, LFI of Lake Charles, Labor Finders and/or ACE American Insurance Company."  Given the prior ruling of this court on this issue there is no reasonable basis for defendant to again assert that "the defendant now named in this

7

judgment" and who now appeals that judgment was "not even the [defendant] in the earlier judgments." We shall endeavor to make clear in this decision the party responsible to claimant and reiterate the previous finding of this court that "the party cast in judgment is clearly identified", i.e. claimant's "employer, LFI of Lake Charles" *DeBarge*, 87 So.3d at 931, a/k/a LFI Fort Pierce, Inc. and its insurer ACE Insurance Company.

LFI does not dispute that DeBarge is temporarily disabled as a result of her work-related injury. LFI bases the legitimacy of its actions on the assertion that DeBarge failed to inform her employer, in a medical history questionnaire completed when she applied for work with LFI in 2005, about alleged neck problems dating back to 1996-1997. This, says LFI, was a violation of the fraud provisions of La.R.S. 23:1208.1which disqualifies DeBarge from receiving benefits. Louisiana Revised Statute 23: 1208.1 provides:

> Nothing in this Title shall prohibit an employer from inquiring about the previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of workers' compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

The medical history questionnaire submitted in evidence bears the caption "Labor Finders" (nowhere does the document identify the employer by any other name) and is signed by Sherry DeBarge. It is not dated, nor is it signed by anyone on behalf of Labor Finders, but DeBarge admitted that this is the form she filled

out when applying for this job. The form bears the requisite notice in bold lettering as required by La.R.S.23:1208.1. The applicant agrees by signing the document to provide any and all medical records which may be requested by Labor Finders. The applicant is further notified at the outset before answering any questions that (emphasis added):

> The **purpose of this inquiry is to determine whether I currently have the physical or mental qualification necessary to perform the job that has been offered,** and what accommodations, if any, may be necessary, so that I can perform the job without posing a direct threat to the health or safety of myself or others and for the purposes and reasons stated on the attached questionnaire.

Thus, having been informed of the purpose of the questionnaire, applicants, such as DeBarge, set forth to answer the questions put forth in the context stated by Labor Finders. In response to the instruction to "list any conditions for which you have been treated in the past 3 years" DeBarge wrote "breast cancer." In response to the inquiry "Have you ever been hospitalized? If so, for what condition?" she responded "breast cancer." In response to the question "Is there any health-related reason you may not be able to perform any job function for which you are applying?" she responded "No." To the question "Have you had major illness that required medical attention in the last 5 years?" DeBarge responded "No." In response to the question "How many days were you absent from work because of illness last year?" she responded "None." Answering the inquiry "Do you have any physical defects which preclude you from performing certain kinds of work?' DeBarge responded "No," as she did to the next question "Do you have any disabilities or impairments which may affect your performance in the position for which you are applying?" On the page provided which lists a number of medical conditions, diseases, and injuries DeBarge indicated with a check mark in response

9

to the inquiry "Have you ever had or been injured or been treated for any of the following conditions or disease?" the following answers: "Back" – "No"; "Neck injury" – "No"; "Any back injury or disease process of the back resulting in a disability or restrictions?" – "No"; and "Surgical removal or repair of an intervertebral disk or Spinal fusion (Back Surgery) – "No." DeBarge disclosed with added explanation that she was being treated with Diovan for high blood pressure and Tomoxifen for the prevention of cancer.

DeBarge testified at trial, without contradiction, that after a four to six month period of time in 1996/1997 she was returned to work with no restrictions and worked consistently performing physical labor until 2005 when the subject work accident occurred. She has not worked since the accident at issue. The medical evidence supports her testimony in this regard and LFI offered no challenge to this evidence and testimony. We find no error in the WCJ's finding that DeBarge's answers to these questions cannot be construed as intentionally misleading or intentionally untruthful. The WCJ expressed his findings and rationale on the record and correctly applied the prior jurisprudence of this court on the subject. He stated on the record:

> Labor Finders' position in this regard is based on Ms. DeBarge's answers to a pre-employment questionnaire she filled out when she applied for the job as a laundry assistant after the hurricane in 2005. It looks as if she did not tell Labor Finders that she had neck pain back in 1996, some nine years before she applied for the job. And, technically, that answer appears to be untrue.
>
> However, it has been my experience that most laborers when asked if they have a spinal condition translate the question into a query as to whether they suffered from some disease or such severity and magnitude that they are unable or restricted in some form or fashion from doing the work for which they're applying. An untrue or inaccurate answer, standing strictly on its own, does not automatically equate to the commission of fraud.

There is every indication that well before the November accident, Ms. DeBarge had recovered sufficiently from her back ailments to work in the shrimp business and she certainly appeared to be able-bodied enough to perform the strenuous sort of work expected of post-hurricane temporary laborers.

The medical records are utterly devoid of any statement by any medical practitioner to the effect that Ms. DeBarge ever had a permanent disability to her neck. Granted, the medical records show that years before she went to work for Labor Finders, she was told by a chiropractor that she had a disc problem in her back.

Dr. Bertuccini, on whom the defendant relies heavily, almost totally, for its support of the fraud stance, testified that when he reviewed a 1996 M.R.I., he saw little more than evidence of arthritic changes. That scarcely qualifies as pre-existing permanent partial disability within the meaning of the statute.

And, even if Ms. DeBarge was attempting to conceal her previous condition, she certainly was not very conniving in going about it. It's hard to see who she was hiding the fact from. She told her physicians about her medical history and none of them indicated it was inevitable or even very likely that any previous condition would injure her back or arm in the future.

The courts have ruled consistently and repeatedly that a claimant must do more than simply provide untruthful answers before forfeiting benefits. The requirements for fraud are spelled out and are explained in a host of cases and none, virtually none, are met in the instant matter.

After a review of the record we agree with the WCJ. His reasons are amply supported by the record and his finding is not manifestly erroneous. Based on the record before us, we do not find that DeBarge's answers were untruthful nor do they exhibit any intent to deceive. Her answers appear to have been a forthright attempt to fulfil the stated purpose of the questionnaire, i.e. "**to determine whether [she] currently has the physical or mental qualification necessary to perform the job.**" In *Colonial Nursing Home v. Bradford*, 02-588 p. 4,5 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, 1267 *writ denied* 03-364 (La. 4/21/03), 841 So.2d 802, we provided a thorough explanation of the application of the fraud provisions of La.R.S. 23: 1208.1:

11

La.R.S. 23:1208.1 applies when an employee is dishonest on an employer's medical questionnaire before the accident or injury. In *Resweber v. Haroil Const. Co.*, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7, the supreme court concluded that the legislatively imposed forfeiture under La.R.S.23:1208.1, applies only if the employer suffers prejudice. An employer is prejudiced only when the false statement "directly relates to the medical condition for which a claim is made or affects the employer's ability to receive reimbursement from the second injury fund." La.R.S. 23:1208.1. The claimant must do more than simply provide untruthful answers before forfeiting benefits. The employer must also prove that the untruthful statements were prejudicial to it and that it provided the employee with statutory notice of the forfeiture provision. Because statutory forfeiture is a harsh remedy, its application must be strictly construed. *Resweber,* 660 So.2d 7.

. . . .

This court has held "[w]hen there is any legitimate ambiguity concerning the questionnaire or inquiries into an employee's medical history, a court should lean favorably toward the employee in determining whether he knowingly [sic] failed to answer the questionnaire truthfully." *Holmes v. J.E. Merit Contractors, Inc.*, 97-553, p. 5 (La.App. 3 Cir. 10/29/97). 702 So.2d 1126, 1131, *writ denied*, 97-2972 (La.2/6/98), 709 So.2d 741, quoting *King v. Grand Cove Nursing Home*, 93-779, p. 5 (La.App. 3 Cir. 3/9/94), 640 So.2d 348, 351, *writ denied*, 94-0865 (La.5/13/94), 641 So.2d 204.

In *Taylor v. G.W. Morgan Logging, Inc.*, 12-294, p. 2 (La.App. 3 Cir. 10/3/12), 100 So.3d 341, 343, Judge Painter writing for the court, addressed the issue of false representations allegedly made in work questionnaires such as will disqualify an employee from receiving benefits for a work-related injury:

Defendant first argues that the WCJ erred in finding that it did not carry its burden of proof with regard to its LA.R.S. 23:1208.1 defense by failing to recognize that the triple level laminectomy being recommended for Plaintiff would result in substantially greater disability than it would have had the prior injury not been present.

The determination by a WCJ as to whether a claimant has made a false statement, willfully, for the purpose of obtaining workers' compensation benefits is a finding of fact [ ] and is, therefore, subject to the manifest error standard of review. *Phillips v. Diocese of Lafayette,* 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. However, we must keep in mind that La.R.S. 23: 1208(E) is penal in nature. Any statute that is penal in nature must be construed in favor of the one receiving benefits under that chapter of the law. *Fontenot*

*v. Reddell Vidrine Water District.*, 02-439 (La.1/14/03), 836 So.2d 14; *Olander v. Schillilaegh's*, 04-725 (LA.App. 3 Cir. 3/23/05), 899 So.2d 97.

. . . .

Concerning the standard of appellate review of a forfeiture claim, the court in *Rowan Cos., Inc. v. Powell*, 02-1894, 02-1895, p. 6 (La.App. 1 Cir. 7/2/03), 858 So.2d 676,680, *writ denied*, 03-2177 (La.11/14/03), 858 So.2d 425 (citations omitted), stated:

> The determination of whether there is a false statement or representation willfully made for the purpose of obtaining any benefit or payment involves inherently factual determinations an, thus, this court's review of those findings by the WCJ is governed by the manifest error standard. Under that standard of review, this court may only reverse the WCJ's decision if we find (1) there is no reasonable factual basis for the finding in the record and (2) the finding is clearly wrong or manifestly erroneous.
>
> *Phillips v. Diocese of Lafayette*, 869 SO.2d at 316-17, (quoting in part *Flintroy v. Scott Cummin Salvage*, 36,857, p. 12 (LaApp. 2 Cir. 3/10/03), 839 So.2d 1231, 1238, *writ denied*, 03-1068 (La.6/6/03), 845 So.2d 1093 (citations omitted))

*Jim Walter Homes, Inc. v. Guilbeau,* 05-1473, pp. 5-6 (La.App. 3 Cir. 6/21/06), 934 So.2d 239, 243-44.

In *Holmes v. J.W. Merit Constructors, Inc.*, 97-553 (La. App. 3 Cir. 10/29/97), 702 So.2d 1126, *writ denied*, 97-2972 (La. 2/6/98), 709 So.2d 741, this court addressed an employer's claim that the claimant was not entitled to benefits for his work-related injury because of false answers on his second injury fund employment questionnaire. In *Holmes,* the employee signed a questionnaire which asked if the applicant was "bothered with or have you ever had the following" referring to a list of items to be marked "Yes" or "No." In response, Mr. Holmes indicated with a "No" concerning "arthritis and knee problems, despite being aware that he had arthritis and knee problems before the accident." *Id*. at 1131. The WCJ found the questionnaire ambiguous and awarded recovery. This court

13

agreed with the WCJ's finding and also found the medical record did not support the employer's claims. This court further held:

> La.R.S. 23:1208.1 should be construed against the employer, who is in a better position to prevent accidents in the workplace through its hiring and firing decisions than is the worker, who seldom has the luxury of opting out of the workplace. *Pickett v. Stine Lumber Co.*, 93-1534 (La.App. 3 Cir. 6/1/94), 640 So.2d 769. In *King v. Grand Cove Nursing Home*, 93-779, p. 5-6 (La.App. 3 Cir. 3/9/94); 640 So.2d 348, 351-52, *writ denied*, 94-0865 (La.5/13/94), 641 So. 2d 204, adopting the workers' compensation judge's findings and analysis, we quoted as follows:
>
>> "When there is any legitimate ambiguity concerning the questionnaire or inquiries into an employee's medical history, a court should lean favorable toward the employee in determining whether he knowlingly [sic] failed to answer the questionnaire truthfully. In other words, for the sanction of La.R.S. 23:1208.1 to apply, the employer should have the burden to prove that the questionnaire or inquiries into an employee's medical history were clear and unambiguous, and that conditions were such that an employee fully understood that his answers had to be thorough and complete.
>>
>> . . . .
>>
>> "There are sound reasons to require an employer to explain a medical history questionnaire to an employee, who is ofter [sic] uneducated. Conceivably, it is to an employer's advantage that the claimant not answer a medical history form correctly or completely because in that case it would not owe an workers' compensation at all for a reinjury, regardless of the circumstances. The potential for abuse would be great and the best safeguard would be to require or to find that it is implicit within the meaning of 1208.1 that the employer present the medical history questionnaire to the prospective employee in a thorough manner."

*Holmes*, 702 So.2d at 1131.

The WCJ's reliance on our long line of jurisprudence was well placed and his ruling is clearly supported by the record.

We also find no merit in the employer's assertion that claimant's recovery for medical costs incurred as a result of Dr. Gunderson's surgery are limited to $750.00 under the provisions of La.R.S. 23:1142. The statute provides in pertinent part:

> B. **Nonemergency care**. (1) (a) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation…
>
> C. **Emergency Care**. (1) In no event shall prior consent be required for any emergency procedure *or treatment deemed immediately necessary* by the treating health care provider . . .
>
> . . . .
>
> E. **In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.** (emphasis added)

LFI denied compensability for DeBarge's work-related injury for quite some time and continued to do so prior to her surgery. In fact, for more than two years after DeBarge's injury at work LFI denied the occurrence of a work-related injury as well as denying compensability. It was not until trial on March 2, 2011 that LFI admitted DeBarge was injured on the job and since that time has continued to assert that it does not have to pay DeBarge because she was untruthful on LFI's questionnaire. Dr. Gunderson and Dr. Bertuccini agreed that surgery was necessary. The long period of conservative, palliative treatment failed to provide relief to DeBarge who was living in constant pain which she could no longer endure. Additionally, we note, that LFI has paid reimbursement for Dr. Gunderson's surgical fee totaling $10,000.00, which appears to make the issue of

his fee moot. It is, however, odd, and unexplained by LFI, that it has not paid the attendant additional medical costs for this procedure including the bill from the hospital. The WCJ articulated a sound basis for his decision awarding benefits and medicals to DeBarge and it is worth quoting him at length:

> The overreaching issue at dispute here is the extent of the surgery Ms. DeBarge underwent after the accident. In brief, the defendant contends that Ms. DeBarge's orthopedic surgeon exceeded the authority given him by the defendant and proceeded to expand the scope of his surgery on his own initiative. Specifically, the defendant complains that Dr. Clark Gunderson operated on the C4-5 level and the C5-6 level of the spine after the employer agreed only to the authorization at the C4-5-6 level.

> The claimant counters that Dr. Gunderson's decision to include the C4-5 level was entirely reasonable, indeed necessary, given the long history of medical treatment, most of it thoroughly unsuccessful, which Ms. DeBarge had endured when she finally resorted to surgical intervention to relieve her pain. The surgery was done more than three years after her injury.

> Most of the evidence presented to the Court during the trial consisted of medical reports and records from the treating physician, second opinion physician, and the independent medical examiner. The only witness at her trial was Ms. DeBarge. The adjuster, who presumably made the operative decisions regarding payments, authorization of treatment, and ultimately the termination of medical benefits, was not present, leaving the Court the task of pretty much inferring from the written record the rationale and reasoning of the insurance carrier.

> The medical records indicate that the day after the November 2, 2005, accident Ms. DeBarge was sent to Hunter McGuire medical facility and returned several times for the next month or so. She was informed that she could not drive nor operate machinery and was taken off work. She was then referred to a neurologist, Dr. Sleiman Salibi, who on October the 13th, 2005, extended her leave from work and advised her to rest for a month.

> It appears from the records at this point, Ms. DeBarge was treated on and off at a local charity hospital for about two years or so. From all accounts, after she became increasingly frustrated with the type of medical treatment she was receiving, she then obtained a court judgment allowing her to be examined by Dr. Gunderson, who on April the 24th, 2007, found her disability required that she be continued in a no-work status. Dr. Gunderson still maintains that his patient cannot work.

The claimant was then sent by her ex-employer to be evaluated by an orthopedic specialist of its choosing, Dr. James Perry, who found her suitable for what he termed "at least sedentary work." It's not clear what exactly the defendant did at that point in response to that opinion, however, no evidence was presented that suggested that the employer then offered her any position commensurate with its own physician's recommendation. Apparently, no vocational rehabilitation services were offered.

Considering that these two medical opinions were not in sync, the Court then appointed Dr. Thomas Bertuccini as an independent medical expert who examined Ms. DeBarge on February the 11th, 2008. Dr. Bertuccini agreed that Ms. DeBarge at that point was not capable of working.

Now, there certainly are some shade(s) (sic) of difference in the opinion of these two orthopedic surgeons, and this court is neither qualified nor inclined to decide who is correct from a purely medical standpoint; however, it is required to determine whether the adjuster's decision in refusing to pay for the overall surgery was reasonable under the circumstances.

Dr. Bertuccini readily and candidly acknowledged that his one-time examination was not sufficient for him to fully and completely address the surgical recommendations of Dr. Gunderson. To do so, he suggested that he would need to see her again, perhaps on a continuing basis for a while at least.

But, Dr. Bertuccini did support Dr. Gunderson's recommendation that surgery was definitely required on Ms. DeBarge's neck at the C5-6 level, even as he questioned the involvement of the C4-5 level.

Meanwhile, at this point, Ms. DeBarge was still dealing with pain which Dr. Gunderson and Dr. Bertuccini agreed was debilitating. Finally, on January the 15th, 2009, more than three years of unsuccessful treatment and ineffective medicines, she paid Dr. Gunderson $10,000.00, paid another $10,000.00 to the Lake Charles Memorial Hospital, and ran up more than $25,000 in other medical bills to have her neck fixed.

And, the result, according to Ms. DeBarge, was that the surgery gave her relief from her continual headaches and constant pain.

Now Ms. DeBarge's action on the surface make sense, certainly from her point of view. She very credibly explained in court that after more than three years, she simply could no longer tolerate the pain and concluded that her only recourse was to follow the recommendation of her treating physician, Dr. Gunderson, and to undergo serious spinal surgery.

On September the 17th, 2007, Dr. Gunderson had requested authorization to perform an anterior cervical fusion at C4-5 and C5-6 with anterior plate and external stimulator. For the previous six months or so, he had been providing non-intrusive, relatively conservative treatment which seemed to have little positive effect either in a substantive or palliative sense.

Now at this point, try as I might, I draw a complete blank as to the adjuster's line of thought. The employer's S.M.O., Dr. Perry, saw Ms. DeBarge about two months before Dr. Gunderson's surgical recommendation. How, the claimant's attorney reasonably asks, could Dr. Perry have recommended against a surgery which had not yet been suggested at the time of the evaluation? And if that's the case, and it looks to be, the penultimate question is what exactly did the adjuster have in his hands in the way of medical evidence which would controvert Ms. DeBarge's entitlement to the surgery recommended by her treating physician.

The independent medical examiner, Dr. Bertuccini, later agreed that neck surgery was required, although he was not certain that the C4-5 portion of the operation was necessary.

I suppose the situation might be different if Dr. Gunderson, who had the clear and explicit agreement from Dr. Bertuccini on the requirement for C5-6 neck surgery, decided on his own to extend the scope of operation to providing something like a knee transplant, but that's not at all what happened here. Any reasonable analysis of Dr. Gunderson's judgment must be tempered with an evaluation of the extent of his knowledge of this patient's circumstances.

The medical reports clearly indicate that he has seen Ms. DeBarge repeatedly and had treated her for a long time, giving him the insight to develop a fully informed decision of precisely which parts of the spine were involved as a result of her work accident.

Commonsense, not to mention Third Circuit jurisprudence, supports the proposition that the treating physician's views should be heavily weighed.

What's also puzzling to me is why the adjuster paid only $10,000 to Dr. Gunderson and did not pay the $10,000 owed Lake Charles Memorial Hospital for her surgery. I don't understand the math here. Equally perplexing is the fact that the letter from the adjuster authorizing the C5-6 portion of the surgery came only after Dr. Gunderson had performed the operation.

And I am thoroughly baffled by the rationale which the adjuster employed on August the 17th, 2009, when it was decided to completely deny virtually all ongoing medical treatment. I read the letter to Ms. DeBarge informing her in no uncertain terms that she was pretty much on her own in getting her neck fixed. There's not a

18

word not even a hint of explanation as to why. There was no better explanation given at trial either.

> I am really not sure of exactly what else the adjuster could have done to better qualify for the imposition of penalties for improper termination of benefits.

Ditto - we can hardly say it better than Judge Lowery. As we discussed in

*Louviere v. Food & Fun, Inc.,* 06-469 (La.App. 3 Cir. 10/11/06), 941 So.2d 155,

where, as here, the claimant spent several years in agony and pain while her

employer ignored her claim and after her prolonged period of

conservative/palliative treatment failed she obtained surgery which she had to pay

for on her own, the law does not require her to get her employer's approval.

> The court in *Sneed v. RTA/TMSEL*, 03-1532 (La.App. 4 Cir. 2/25/04), 869 So.2d 254, found that the employer's denial of claimant's workers' compensation request for surgery amounted to denial of liability for claimant's injury and, therefore, the $750.00 cap imposed by La.R.S. 23:1142 was not applicable. *Citing Gros v. Gaudin*, 00-1015 (La.App. 5 Cir. 10/31/99), 773 So.2d 172, *writ denied*, 00-3242 (La.1/26/01), 782 So.2d 635, and *Barron v. First Lake Properties, Inc.*, 93-902 (La.App. 5 Cir. 3/29/94), 636 So.2d 970, the court went on to state that the compensability of a claimant's work related injury may be generally admitted, while authorization for a specific medical procedure is denied, amounting to denial of compensability under La.R.S. 23:1142(E). *Id*. **The court found the neurotomy medically necessary, stating that two years had passed since the occurrence of the injury, the claimant had undergone conservative treatment without any benefit, and it was apparent that the treating physician was not "rushing to have the patient undergo unnecessary surgery, but he intended to attempt to alleviate her back pain."** *Id*. at 262.

> . . . .

> The court would also note that La.R.S. 23:1142(C) dispenses with the need for prior approval in cases of emergency, or where treatment is "immediately necessary." Defendant argues strenuously that there is no emergency, as further delay would not cause Claimant more damage. They do not discuss the phrase, "immediately necessary." In the instant case, we consider Dr. Blanda's testimony that Claimant had a herniated disc as L3-4 and a herniated disc at L4-5, as well as considerable instability at the L4-5 level, clearly shows that *the procedure was necessary at the time it was performed*. The

fact that he had been treating Claimant for over seven years and had run out of options clearly establishes that further delay would be unreasonable. Then, the "immediate" factor is established. Accordingly, we hold that the surgery was "immediately necessary" and therefore, no approval was required.

*Louviere*, 941 So.2d at 160-61 (emphasis added)

The record fully supports the WCJ's articulated reasons for his ruling and we find there was a reasonable basis for his decision. Likewise, we find ample support in the record for the reasonableness and soundness of the WCJ's award for attorney fees and penalties. The WCJ correctly awarded such based on the provisions of La. R.S. 23:1201.1, and his finding that LFI's termination/discontinuance of medical benefits was arbitrary and capricious and clearly without probable cause is not manifestly erroneous. We also find, under our decision in *Bradford* and other cases cited herein, that DeBarge is entitled to attorney fees for this appeal, including the Motion to Stay, and we thus award claimant attorney fees for work done on appeal in the amount of $7,500.00.

DeBarge answers this appeal asserting the WCJ "tacitly" erred in failing to award attorney fees and penalties for LFI's failure to reasonably controvert DeBarge's entitlement to indemnity benefits. Given the trial judge's findings, which we agree are well supported by the record, we agree with claimant that she is entitled to a $2,000.00 statutory penalty in addition to the penalty assessed by the WCJ for other infractions. The award of $14,000.00 in attorney fees by the WCJ adequately addressed all of the trial work performed by claimant's attorney.

For the reasons stated we affirm the WCJ's ruling except to amend it to further award DeBarge an additional $2,000.00 in penalties to be paid by LFI Fort Pierce, Inc. a/k/a Labor Finders. We also award DeBarge attorney fees for work

done on appeal in the amount of $7,500.00, and assess all costs of this appeal, including all costs associated with the Motion to Stay filed in this court, to LFI Fort Pierce, Inc. a/k/a Labor Finders.

**AFFIRMED AS AMENDED**.